# In the United States Court of Federal Claims

No. 10-153T
(Filed: May 11, 2012)

```
* * * * * * * * * * * * * * * * * * * * * * * * * * *
                                                    *
CBS CORPORATION & SUBSIDIARIES                      *   Income Tax Refund; Calculation of
(f/k/a VIACOM INC. & SUBSIDIARIES),                 *   Gain Upon Sale of Property;
                                                    *   Reduction of Basis Due to
             Plaintiff,                             *   Depreciation Allocable to Exempt
                                                    *   Foreign Trade Income; 26 U.S.C. §§
      v.                                            *   161, 167, 261, 265, 921-927, 1001,
                                                    *   1011, 1012, and 1016(a)(2); Foreign
  THE UNITED STATES,                                *   Sale Corporation Regime; P.L. 106-
                                                    *   516, 114 Stat. 2423.
             Defendant.                             *
                                                    *
* * * * * * * * * * * * * * * * * * * * * * * * * * *
```

James P. Fuller, Kenneth B. Clark, Andrew J. Kim, and Matthew D. Noerper, Fenwick & West LLP, 801 California Avenue, Mountain View, CA, 94041, for Plaintiff.

Fredrick C. Crombie, John A. DiCicco, Steven Frahm and Mary M. Abate, United States Department of Justice, Tax Division, Washington, D.C. 20044, for Defendant.

___

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

___

**WILLIAMS**, Judge.

This tax refund case comes before the Court on the parties' cross-motions for summary judgment. At issue is whether, in calculating the gain realized upon the sale of an asset under the Foreign Sales Corporation regime, the asset's basis should take into account depreciation deductions allocable to tax-exempt foreign trade income. This is an issue of first impression, but because the Foreign Sales Corporation regime was repealed in 2000, not an issue likely to recur.

**Background**[1]

**The Foreign Sales Corporation Regime**

In 1984, Congress enacted the Foreign Sales Corporation ("FSC") regime, 26 U.S.C. §§ 921-927, which was designed "to provide American firms with a tax incentive to increase their exports." Boeing Co. v. United States, 537 U.S. 437, 456 (2003) (citing S. Rep. No. 92-437 at 13 (1971)).  A qualifying FSC, as defined in 26 U.S.C. § 922 (1994), was permitted to treat roughly 30 percent of its "foreign trade income" as "exempt foreign trade income." 26 U.S.C. § 923(a) (1994).  Exempt foreign trade income was not subject to taxation in recognition that such income was "not effectively connected with the conduct of a trade or business within the United States."  26 U.S.C. § 921(a).  Section 923(b) defined "foreign trade income" as "the gross income of an FSC attributable to foreign trading gross receipts."  Such receipts included an FSC's gross receipts "from the sale, exchange, or other disposition of export property," and "from the lease or rental of export property for use by the lessee outside the United States." 26 U.S.C. § 924(a)(1)-(2) (1994).

The FSC regime did not permit an FSC to reduce its taxable income using deductions attributable to the generation of exempt foreign trade income.  Section 921(b) thus required deductions "derived by a FSC from any transaction [to] be allocated between (1) the exempt foreign trade income derived from such transaction, and (2) the foreign trade income (other than exempt foreign trade income) derived from such transaction, on a proportionate basis." 26 U.S.C. § 921(b) (1994).  The version of § 265(a)(1) in effect at the relevant time provided that in computing taxable income, no deduction would be allowed for any amount "which is allocable to one or more classes of income . . . wholly exempt from the taxes imposed by this subtitle." 26 U.S.C. § 265(a)(1) (2000).[2]  Under the FSC regime, because 30 percent of an FSC's income was exempt from taxation, 30 percent of the FSC's deductions were disallowed for purposes of calculating taxable income.

After a panel of the World Trade Organization ("WTO") agreed with the European Union that the FSC regime was an export subsidy in violation of WTO law, Congress repealed the FSC regime in 2000. Pub. L. No. 106-519, 114 Stat. 2423 (2000).  Section 5(c)(1) of the repealing act, however, contained a grandfather clause exempting certain FSC transactions from the repeal. To qualify under the grandfather clause, the FSC must have been in existence on September 30, 2000, and the transaction must have occurred:

(A) before January 1, 2002; or
(B) after December 31, 2001, pursuant to a binding contact--
(i) . . . between the FSC (or any related person) and any person . . . not a related person; and

---

[1]  This background is derived from the Joint Stipulation and the parties' motion papers. There are no genuine issues of material fact.

[2] Hereinafter, unless otherwise indicated, all short form citations refer to Title 26 of the United States Code, ("Code" or "IRC"),  as codified in 2000.

>   (ii) . . . in effect on September 30, 2000, and at all times thereafter.

Id.  The transactions at issue here are subject to the FSC regime under the grandfather clause.

Plaintiff CBS is a corporation with its principal place of business in New York, New York, and is the common parent of an affiliated group of corporations that file consolidated federal income tax returns.  During the 2005 tax year, Peak FSC, Ltd. ("Peak") and Westinghouse Credit Corporation, FSC V, Ltd. ("FSC V"), each a Bermuda corporation, were both directly, wholly-owned subsidiaries of CBS.  Both Peak and FSC V qualified as FSCs under 26 U.S.C. § 922 (1994).

In 1990, Peak and FSC V each purchased a single Boeing 747-467 aircraft ("the aircraft") for $127,500,000 each.  Peak and FSC V then entered into separate leasing agreements with Cathay Pacific Airlines.  Under the agreements, Peak and FSC V leased the aircraft to Cathay until 2005, when Cathay purchased the aircraft.

In each of tax years 1990-2005, Peak and FSC V depreciated the aircraft according to § 167(a), which allows a depreciation deduction for property used in "the trade or business" or "held for the production of income."  Both Peak and FSC V also allocated these depreciations as required by § 921(b), i.e., each FSC deducted only 70 percent of the aircraft's total depreciation, and did not take any deductions for depreciation allocated to exempt foreign trade income.

In 2005, Peak sold its 747 to Cathay for $114,750,000, reporting a gain of $45,729,588, and FSC V sold its 747 to Cathay for $114,750,000, reporting a gain of $45,163,872.  Peak and FSC V calculated their gain by subtracting from the aircraft's cost basis both the depreciation allocated to nonexempt foreign trade income and the depreciation allocated to exempt foreign trade income.  Subsequently, Plaintiff discovered the error made on its original tax return in calculating the gain from the 2005 aircraft sales.  Plaintiff realized it had incorrectly reduced the adjusted basis in the aircraft by depreciation allocated to exempt foreign trade income.

On November 24, 2009, Plaintiff filed a timely administrative claim with the IRS seeking a refund of $8,554,919, which was equal to the reduction in tax attributable to the reduced gain.  In its Amended United States Corporation Income Tax Return, Plaintiff sought to increase the aircraft's bases by the amount of depreciation previously allocated to exempt foreign trade income.  In so doing, Plaintiff argued that such depreciation was neither an "allowed" nor "allowable" deduction under § 1016(a).  The adjustments led Plaintiff to recalculate the gain realized by Peak on the sale of its aircraft from $45,729,588 to $28,185,712, and the gain realized by FSC V on its sale from $45,163,872 to $27,789,710.  After that claim was disallowed by the IRS, Plaintiff filed the instant suit.

## Discussion

**Summary Judgment Standard**

Summary judgment is appropriate where the evidence demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a) of the Rules of the United States Court of Federal Claims ("RCFC"); see also

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A genuine dispute is one that "may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250.  A fact is material if it "might affect the outcome of the suit."  Id. at 248.

The moving party bears the burden of establishing the absence of any material fact, and any doubt over factual disputes will be resolved in favor of the non-moving party.  Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987).  Once this burden is met, the onus shifts to the non-movant to point to sufficient evidence to show a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor.  Liberty Lobby, 477 U.S. at 256-57.  A court does not weigh each side's evidence when considering a motion for summary judgment, but "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  When opposing parties both move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Mingus Constructors, 812 F.2d at 1391.

**Pertinent Provisions of the Internal Revenue Code**

The parties dispute the amount of gain Peak and FSC V should have realized upon the sale of their aircraft.  With respect to that calculation, the Supreme Court has observed that:

> Section 1016 is one of a number of general provisions [in the Internal Revenue Code] that together determine the amount of gain or loss a taxpayer must recognize when he sells or otherwise disposes of any type of property.  Section 1001(a) provides the basic rule: gain or loss is determined by subtracting "adjusted basis" from "amount realized."  Section 1011(a) defines "adjusted basis" as "basis . . . adjusted as provided in section 1016."

United States v. Hill, 506 U.S. 546, 554-55 (1993).

Section 1016(a) requires that:

Proper adjustment in respect of the property shall in all cases be made

. . . .

 (2) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount--

(A) allowed as deductions in computing taxable income under this subtitle or prior income tax laws, and

(B) resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer's taxes under this subtitle (other than chapter 2, relating to tax on self-employment income), or prior income, war-profits, or excess-profits tax laws,

>but not less than the amount allowable under this subtitle or prior income tax laws.

§ 1016(a)(2).

As the Supreme Court has recognized, "whether or not the taxpayer ever took a depreciation, amortization, or depletion deduction with respect to the item he is selling, he must, for purposes of § 1016, determine whether such deductions were allowable with respect to that item, and reduce his basis by at least that allowable amount." Hill, 506 U.S. at 557. The Court construes the term "allowable" in § 1016(a)(2) by first examining the plain meaning of the statute. Cf. Energy East Corp. v. United States, 92 Fed. Cl. 29, 33 (2010), aff'd, 645 F.3d 1358 (Fed. Cir. 2011) ("The language of the statute itself is the starting place for the Court's inquiry into the statute's meaning. . . . Where the intent is unambiguously expressed by the plain meaning of the statutory text, the Court gives effect to that clear language without rendering any portion of it meaningless."); Jade Trading, LLC v. United States, 65 Fed. Cl. 188, 192 (2005) ("When interpreting a statute, courts must first examine the plain language of the statute.").

As the Ninth Circuit explained, the term "allowable" in § 1016(a)(2) refers to a deduction that is permitted, and not otherwise forbidden, by the Code. The Ninth Circuit reasoned:

>The problem with the IRS's position is that it misconstrues the meaning of "allowable as a deduction." Although not explicitly defined in the tax code, these words are a term of art, with a fixed meaning in the tax arena. . . .
>
>There are two elements to this definition. First, the deduction must be "permitted" by the tax code. . . . Second, the deduction must not be otherwise limited or forbidden in the tax code.

Flood v. United States, 33 F.3d 1174, 1177 (9th Cir. 1994) (citations omitted).

The Federal Circuit applied this same definition in construing the terms "allowable" in another Code provision, § 163(d)(1), stating:

>In common usage, the word "allowable" means "permissible: not forbidden: not unlawful or improper." Webster's Third New International Dictionary (1986). Thus, a deduction is "allowable" under the Code if some provision of the Code permits it to be taken as a deduction <u>and no other provision of the Code acts to limit or forbid it as a deduction</u>. See Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). . . .
>
>Not only is such a construction consistent with the common meaning of the word, it is consistent with the usage of the word in the context of the IRC. . . . Thus, <u>"allowable" deductions are those deductions permitted and not otherwise forbidden or limited by the IRC</u>, whether or not they are actually used and regardless of their lack of tax benefit.

Sharp v. United States, 14 F.3d 583, 587-88 (Fed. Cir. 1993) (emphasis added).

While adjustments to basis must be made to the extent of the amount of depreciation either allowed or allowable as deductions, no adjustment is permitted or required to the extent of disallowed deductions. § 1016(a)(2); Petrich v. Comm'r, 40 T.C.M. (CCH) 303, 306 (T.C. 1980), aff'd, 676 F.2d 712 (9th Cir. 1982) (Table) (holding that it was improper for the Service to adjust basis under § 1016(a)(2) where the property at issue was not property on which depreciation deductions were allowable).

Section 161 of the Code prohibits deductions for amounts of depreciation allocable to tax exempt income, stating:

> In computing taxable income under section 63, there shall be allowed as deductions the items specified in this part, subject to the exceptions provided in part IX (sec. 261 and following, relating to items not deductible).

§ 161.

The general rule governing deductions is stated in § 261:

> In computing taxable income no deduction shall in any case be allowed in respect of the items specified in this part.

§ 261. Section 265(a)(1) states further:

> No deduction shall be allowed for (1) Expenses. -- any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle . . . .

§ 265(a)(1). Thus, under the clear language of §§ 161, 261 and 265(a)(1), deductions for depreciation allocable to tax exempt income are expressly forbidden.

**Under the FSC Regime, Each Aircraft's Adjusted Basis Should Not Reflect the 30-Percent Depreciation Deductions Allocable to Tax Exempt Foreign Trade Income.**

Plaintiff correctly argues that because the FSC regime disallowed 30 percent of the depreciation deductions generated during the aircraft's lease, those deductions were not "allowable" under § 1016. "[A] deduction is 'allowable' under the Code if some provision of the Code permits it to be taken as a deduction and no other provision of the Code acts to limit or forbid it as a deduction." Sharp, 14 F.3d at 587-588 (citing Perrin, 444 U.S. at 42). Because § 921(a) allocated deductions to exempt foreign trade income and because deductions allocable to tax-exempt income are forbidden under § 265(a)(1), 30 percent of the aircraft's depreciation deductions were not "allowable" under § 1016. Therefore, as Plaintiff concludes, each aircraft's adjusted basis should not reflect the 30 percent of the aircraft's depreciation deductions allocated to the tax-exempt foreign trade income. Rather, this basis should take into account only the deductions allowable in proportion to the aircraft's non-exempt foreign trade income. Because Plaintiff mistakenly decreased the basis in each aircraft by amounts representing the 30 percent

depreciation deductions, their adjusted bases generated erroneous inflated gains, warranting the claimed tax refund.

### Defendant's Two-Assets Theory[3]

Defendant does not contest Plaintiff's position that 30 percent of the aircraft's depreciation deductions were not "allowable" under § 1016. Rather, in a novel argument, Defendant posits that each individual aircraft should be treated as two separate assets: a depreciable aircraft generating non-exempt foreign trade income, and a nondepreciable aircraft generating exempt foreign trade income.

According to Defendant, "[w]hen each aircraft is treated as two separate properties pursuant to § 1016, Treas. Reg. § 1.167(a)-5, and Hill, the resultant computations reveal that plaintiff has not made any overpayment of tax." Def.'s Cross Mot. for Summ. J. at 23. Defendant elaborates:

> Peak purchased its aircraft for $127,500,000 in 1990 and then sold that aircraft in 2005 for $114,750,000. During the intervening time, Peak took a total of $40,935,712 in depreciation deductions allocated to nonexempt [foreign trade income]. The $17,543,876 in depreciations deductions allocated to exempt [foreign trade income], were disallowed pursuant to § 265(a)(1). Thus, the relevant computations with respect to the aircraft sold by Peak are as follows:
>
> | Sale of Peak Aircraft | Asset No. 1 (70% Nonexempt) | Asset No. 2 (30% Exempt) |
> |---|---|---|
> | Initial Purchase Cost | $89,250,000 | $38,250,000 |
> | Allowed/Allowable Depreciation | $40,935,712 | $0[4] |
> | Tax Basis | $48,314,288 | $38,250,000 |
> | Proceeds/Sale | $80,325,000 | $34,425,000 |
> | Taxable Gain (Loss) | $32,010,712 | $0[5] |
>
> Consequently, with respect to the sale of the Peak aircraft, plaintiff would record in its Subpart F income, $32,010,712 in gain realized upon the sale of that portion of the aircraft that generated nonexempt [foreign trade income] (Asset No. 1, in

---

[3] Defendant did not raise this two-assets theory in the administrative proceedings or in the stipulation. Defendant raised this argument for the first time in briefing the subject motions.

[4] Asset No. 2 has $0 of allowed/allowable depreciation because the $17,543,876 of depreciation deductions allocated to exempt [foreign trade income] were disallowed pursuant to § 265(a)(1). (footnote in quoted text).

[5] While plaintiff has suffered a loss of $3,825,000 upon sale of Asset No. 2, that loss is disallowed pursuant to § 265(a)(1). (footnote in quoted text).

7

> the chart above). Plaintiff, however, would include none of the loss sustained on the sale of the portion of the aircraft that generated exempt [foreign trade income] (Asset No. 2, above), because deductions allocated to exempt [foreign trade income] are expressly disallowed by § 265(a)(1). Inasmuch as plaintiff properly paid tax on $32,010,711.60 in gain on the sale of the Peak aircraft . . . it is not entitled to a refund of that tax.
>
> The relevant computations with respect to FSC V are substantially identical and confirm that plaintiff properly paid tax on $31,614,710.40 in gain on the sale of the FSC V aircraft and is, thus, not entitled to a refund.

Def.'s Cross Mot. for Summ. J. at 23-24 (citations omitted).

Using its two-assets theory, Defendant submits that Treasury Regulation 1.167(a)-5 would apply to the aircraft to justify the above construct. This regulation provides:

> In the case of the acquisition on or after March 1, 1913, of a combination of depreciable and nondepreciable property for a lump sum, as for example, buildings and land, the basis for depreciation cannot exceed an amount which bears the same proportion to the lump sum as the value of the depreciable property at the time of acquisition bears to the value of the entire property at that time.

26 C.F.R. § 1.167(a)-5 (2011). Treasury Regulation 1.167(a)-5 applies to a combination of property that is "depreciable" and "nondepreciable" at the "time of acquisition." As the Federal Circuit has stated, whether an asset is of a character subject to depreciation depends on whether the property is subject to "'exhaustion, wear and tear (including . . . obsolescence),'" <u>Arkla, Inc. v. United States</u>, 37 F.3d 621, 624 (Fed. Cir. 1994), and whether it is "used in a trade or business" or "held for the production of income," § 167(a).

The sale of a single aircraft in the FSC regime does not fit within the plain language of Treasury Regulation 1.167(a)-5. Clearly, each airplane when acquired was <u>not</u> "a combination of depreciable and nondepreciable property." Each airplane was fully depreciable, and the proper tax consequences on the sale of these aircraft have nothing to do with which characteristics of these aircraft were theoretically not depreciable. Rather, the tax consequences stem from the FSC regime which addresses a scenario substantially different from the acquisition of "a combination of depreciable and nondepreciable property for a lump sum" addressed in Treasury Regulation 1.167(a)-5. In the situation sub judice, Congress implemented a policy to promote exports by bestowing tax benefits on exports -- a policy which had nothing whatsoever to do with assessing the character of property as depreciable or nondepreciable or segregating such property into two assets for tax purposes. The policy, the FSC regime, bestowed a tax incentive on American firms to increase their exports in the form of exempting 30 percent of foreign trade income from tax. This statutory exemption had consequences for depreciation deductions and the calculation of gain upon sale. Defendant has not shown that Congress, by designating 30 percent of foreign trade income as exempt, transformed a single asset generating foreign trade income into two separate assets, one "depreciable" and one "nondepreciable" within the meaning of Treasury Regulation 1.167(a)-5. Defendant's effort to import Treasury Regulation 1.167(a)(5) into the FSC regime is untenable.

Defendant also attempts to find parallels in situations involving the allocation of basis within a single asset used for both income-generating and non-income generating purposes, relying on Sharp v. United States, 199 F.Supp. 743 (D.C. Del. 1961) ("Sharp II"). In Sharp II, the District Court for the District of Delaware addressed the proper treatment of tax basis for an aircraft, used partly for pleasure and partly to generate income, which was sold at a loss. The Sharp II court treated the aircraft as two assets for tax purposes and proportioned the basis according to the percentage of time the aircraft was used for each purpose. In support of its ruling, the Court cited Revenue Ruling 286, 1953-2 C.B. 20, which defined a tax-deductible "loss" (under then-§ 23 of the Code) as including "[o]nly that part of a loss resulting from the sale of property used for both personal and income-producing purposes that can be allocated to the income-producing portion of the property . . . ." Sharp II, 199 F.Supp at 745 & n.7 (quoting Rev. Rul. 286, 1953-2 C.B. 20). The Third Circuit, in a two-sentence per curiam opinion, affirmed. Sharp v. United States, 303 F.2d 783 (3d Cir. 1962) (per curiam). Defendant also relies upon Snyder v. Commissioner, 34 T.C.M. (CCH) 965 (1975), which applied the same rationale as Sharp II to apportion the basis of an airplane according to the airplane's dual use for pleasure and for business purposes.

Sharp II and Snyder are inapposite. This is not a situation where the aircraft were used for pleasure as well as business -- they were exclusively business-use, fully depreciable and subject to wholly unrelated statutory largess. The Sharp II court invoked Revenue Ruling 286, but Defendant has cited no pertinent regulatory authority to support its construct here. Defendant makes much of Sharp II's statement that "taxpayers are clearly in error if it is their contention that courts will not regard a thing, normally accepted as an entity, as divisible for tax purposes." Sharp II, 199 F.Supp. at 745. However, there must be some legal basis for dividing up a single entity for tax purposes. Here, nothing in the Code or Treasury Regulations required Plaintiff to treat each aircraft as two distinct assets for purposes of calculating the amount realized upon sale, and no authority supports the retroactive judicial imposition of such a methodology.

## Conclusion

Plaintiff's cross-motion for summary judgment is **GRANTED,** and Defendant's cross-motion is **DENIED**.

The Clerk of the Court is directed to enter judgment for Plaintiff in the amount of $8,554,919, representing an income tax refund for tax year 2005, plus such interest as is provided by law.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**